(105 App. Div. 299.)

### TIMPSON v. MOCK et al.

(Supreme Court, Appellate Division, Third Department. May 16, 1905.)

ATTORNEYS—AUTHORITY TO COMMENCE ACTION—COMMENCEMENT WITHOUT AUTHORITY—DISMISSAL OF COMPLAINT.

 Plaintiff in partition had executed an agreement that such a suit should be brought in her name, other parties paying the expenses, and left the instrument in the hands of her attorney, with instructions not to deliver it to B., who was to act as plaintiff's attorney in the partition suit, until payment of a sum which plaintiff claimed to be owing her from the other parties to the agreement. The instrument was not delivered by plaintiff's attorney, nor was the payment made, but B. prepared a complaint, which plaintiff refused to verify, as the papers did not come through her attorney, and, on B. stating that he could verify the complaint himself if she did not refuse to allow him to do so, she stated that she did not "refuse anything," but that she would sign no papers. *Held*, that there was no authority for the commencement of the suit by B., and a motion to dismiss was properly granted.

Appeal from Special Term, Essex County.

Partition by Martha G. Timpson against John L. Mock and others. From an order directing a dismissal of the complaint, defendants John L. Mock and another appeal. Affirmed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Adelbert W. Boynton, for appellants.
A. Page Smith, for respondent.

CHESTER, J. The order appealed from directs that the complaint be dismissed for want of authority to bring the action on the

part of the appellant Boynton, who signed the complaint and verified it as plaintiff's attorney. It also directs the cancellation of the lis pendens of record, vacates an order of publication of the summons, and directs that all further orders and proceedings had in said action be vacated. The controversy grows out of an attempt to perfect the title to certain premises which the plaintiff purchased from the defendant John L. Mock under a warranty deed given by him and his wife to the plaintiff bearing date October 7, 1903. On the same day Mock and his wife entered into a written agreement with the plaintiff wherein it was recited that there was a defect in the title to the premises in question, arising from the fact "that one Amos W. Barnum and his wife, if any, or the widow and heirs of said Barnum, now have an interest in the premises hereby conveyed," and wherein it was agreed "that the said Mocks hereby expressly authorize said Timpson to take all necessary and legal proceedings that she may deem proper and necessary to perfect said title through such attorney as she may select, and the expense she may be put to in the perfection of said title said Mocks agree to pay, but said Mocks to have one year time to procure title by quitclaim deeds or otherwise to the interest of said Barnum, his heirs, assigns, grantees," etc. "The expense said Timpson may be put to herein to be deducted from $3,000 mortgage this day given said Mocks by her." At the time of the conveyance of said premises by the Mocks to the plaintiff, one Maria Huestis held a first mortgage thereon, which had been reduced to $3,000. In June, 1904, an action was commenced by Mrs. Huestis, acting through the appellant Boynton as her attorney, for the purpose of foreclosing her mortgage, apparently by the concurrence of the Mocks, on the supposition that the foreclosure would perfect the title to the premises; but manifestly the foreclosure could have no such effect, as the defect in the title was one arising many years before the date of the mortgage. The respondent, Timpson, before a sale was had in the foreclosure, paid the principal and interest due upon the mortgage being foreclosed in full, together with the sum of $90 costs, and the action in foreclosure was discontinued. The amount of such costs was paid to said Boynton on behalf of the respondent, under protest. Afterwards it was agreed between Boynton and Smith, representing Mrs. Timpson, that the best way to perfect the title to said premises was through a suit in partition, in which Mrs. Timpson, the respondent, should be plaintiff. An instrument to that effect was prepared by Smith, acting for her, in which it was provided that Boynton should act as her attorney of record in such action, but that it should be carried on at the expense of the Mocks, and that all papers and proceedings from time to time should be submitted to Smith, the attorney for Mrs. Timpson, to be first approved by him. Such proposed agreement was submitted by Smith to Boynton, and the former swears that he told the latter that he would advise his client to excute and deliver it upon the return of the $90 costs of foreclosure. Boynton denies this, but admits that there was talk between them on that subject, but says that he supposed the conversation about the $90 was a joke. It appears that

Boynton procured the signatures of the Mocks to a duplicate of the instrument, and that he also signed it. Mrs. Timpson signed another duplicate of it, and left it in the hands of Smith, with authority to him to deliver it only upon the receipt of said sum of $90 costs theretofore paid by her in the foreclosure suit. The duplicate signed by Mrs. Timpson was never delivered to Boynton or to the Mocks, and for that reason the instrument never became effective as an agreement for any purpose whatever. Notwithstanding it was never delivered, Boynton prepared a summons and complaint in partition, using the respondent's name as plaintiff therein, and on the 29th day of August, 1904, presented it to the respondent, and asked her to verify it. This she refused to do because the papers did not come through her attorney, Smith, and said she would act only under directions from him. Boynton, in his affidavit, says that he then "asked her if she refused to have the partition carried on in her name, and she replied, 'Oh, no, but you must see Mr. Smith, he is my counsel;' that deponent then told her, 'We must use your name, but all the facts are within my knowledge, and I can verify the complaint if you do not refuse to allow me to do so,' and she replied, 'I do not refuse anything; you can do as you please; but I will sign no papers except what come to me through Mr. Smith.'" Even if she said this, it falls far short of any authority to Boynton to commence an action in her name as plaintiff. At most it shows that she did not give expression to a refusal to allow him to verify a complaint, if he pleased to do so, in an action which he had no authority to bring, and which she had refused to permit him to bring in her name until the papers came from her attorney, Mr. Smith. When she told Boynton that he could do as he pleased it was, in effect, telling him that whatever he pleased to do he must do upon his own responsibility, and not upon her authority, for that she had refused to give when she declined to make the complaint effective by verifying it. Under such circumstances he had no authority from her to commence an action in her name, or to verify the complaint as her attorney. The respondent swears that she "has never retained the said Boynton as her attorney to perfect the title to the said premises, nor has she authorized him in writing or otherwise to bring a partition suit or any other action in her behalf, or in her name, for any purpose whatever, nor is she willing that he should act for her as attorney in any matter." Smith also swears in his affidavit that he "has never authorized said suit in partition to be begun in behalf of his client, and, on the contrary, has protested to said Boynton against any action in behalf of his client."

It is entirely clear, upon the papers submitted, for the reasons above suggested, that the action was brought without the authority of the respondent. The order dismissing the action was therefore properly made, and should be affirmed, with costs and disbursements. All concur.